IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC., 946 Quality Dr., Lancaster, South Carolina 29720, and NUTRAMAX MANUFACTURING, INC., 946 Quality Dr., Lancaster, South Carolina 29720,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>BERMAN GOLDMAN & RIBAKOW, LLP, 6811 Benjamin Franklin Dr., Columbia, Maryland 21046 (Howard County) and UHY, LLP, 27725 Stansbury Blvd., Farmington Hills, Michigan 48334,<br><br>　　　　Defendants. | Case No. 1:22-CV-909<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs Nutramax Laboratories, Inc. and Nutramax Manufacturing, Inc. (together, "Nutramax") file this Complaint and Jury Demand against Defendants Berman Goldman & Ribakow, LLP ("BGR") and UHY, LLP and state as follows:

## NATURE OF THE ACTION

1. This case involves professional negligence and breach of contract arising out of Defendants' preparation and filing of Nutramax's state income tax returns for taxable years ending in 2010 through 2019.

2. In preparing and filing Nutramax's returns, BGR and UHY (which acquired BGR in 2018) (a) overstated Nutramax Laboratories' South Carolina-sourced income by failing to properly apportion sales income among states and (b) omitted millions of dollars in available jobs tax credits to which both Nutramax Laboratories and Nutramax Manufacturing were entitled.

3. Although Nutramax was able to amend its South Carolina income tax returns for taxable years ending in 2017 through 2019, it's too late for Nutramax to amend its returns for earlier years.

4. Accordingly, BGR's and UHY's errors caused Nutramax's shareholders to overpay South Carolina income taxes by about $10 million and to incur additional professional fees exceeding $583,000 to analyze the errors and amend Nutramax's returns for taxable years ending in 2017 through 2019.

## JURISDICTION AND VENUE

5. This Court has federal subject matter jurisdiction over Nutramax's claims under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties—Nutramax Laboratories and Nutramax Manufacturing are citizens of South Carolina and, upon information and belief, BGR's and UHY's partners are not citizens of South Carolina—and the matter in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Nutramax's claims occurred in this District.

## PARTIES

7. Plaintiff Nutramax Laboratories, Inc. is a South Carolina corporation with a principal place of business at 946 Quality Drive in Lancaster, South Carolina.

8. Plaintiff Nutramax Manufacturing, Inc. is a South Carolina corporation with a principal place of business at 946 Quality Drive in Lancaster, South Carolina.

9. Upon information and belief, Defendant Berman Goldman & Ribakow, LLP was—until it merged into Defendant UHY, LLP in 2018—a Maryland limited liability partnership with a principal place of business at 6811 Benjamin Franklin Drive in Columbia, Maryland.

10. Upon information and belief, Defendant UHY, LLP is a Michigan limited liability partnership with a principal place of business at 27725 Stansbury Boulevard in Farmington Hills, Michigan. In addition, UHY maintains an office at 8601 Robert Fulton Drive in Columbia, Maryland.

**STATEMENT OF FACTS**

**A.  Nutramax Develops High-Quality Products to Promote Health and Wellness for People and their Pets.**

11. Nutramax, along with its affiliated companies, is a family-owned business that has been developing and marketing nutritional supplement products for people and their pets since 1992.

12. Nutramax's corporate headquarters was in Maryland until 2010, when the company relocated to Lancaster, South Carolina.

13. To induce Nutramax's relocation, South Carolina offered a development incentive package that included, among other things, discretionary jobs development credits.

14. Nutramax entered into a Revitalization Agreement with the South Carolina Coordinating Council for Economic Development, effective June 29, 2010.

15. Nothing in the Revitalization Agreement prevented Nutramax from also getting the benefit of jobs credits for tax purposes under S.C. Code Ann. § 12-6-3360.

16. Currently, Nutramax and its affiliated companies operate facilities in both South Carolina and Maryland and continue to be industry leaders in setting and adhering to high standards in research, manufacturing, and quality control.

17. Although Nutramax is based in South Carolina, Nutramax sells its products all over the United States.

18. Less than 1% of Nutramax's sales are to customers in South Carolina.

19.   Nutramax has elected to be treated as an "S corporation" for tax purposes under § 1362 of the Internal Revenue Code, which means that the company itself files returns but generally pays no income taxes. Instead, items of income, gain, loss, deduction, and credit are passed through to Nutramax's shareholders and reported on their individual tax returns.

**B.   BGR and UHY Prepared Nutramax's State and Federal Tax Returns for Decades.**

20.   Starting in the 1990s, Nutramax contracted with BGR to prepare and file state and federal income tax returns for Nutramax and related entities and shareholders.

21.   Each year thereafter, pursuant to a valid and binding contract, BGR prepared Nutramax's federal income tax returns and certain state returns, including for South Carolina. BGR also prepared the Schedule K-1 for each return, reporting each Nutramax shareholder's share of income, gain, loss, deductions, and credits.

22.   Nutramax provided each shareholder with the shareholder's Schedule K-1, which was then incorporated into the shareholder's own state and federal income tax returns.

23.   As early as 2013, BGR boasted on its website, "We provide effective business and individual tax planning that enables you to achieve the highest after-tax dollars possible. We draw on our in-depth knowledge of tax law and our considerable years of tax planning experience to ensure you receive the maximum benefit." The firm offered "specialized tax advice for family-owned businesses."

24.   Upon information and belief, UHY acquired BGR effective December 3, 2018. According to a December 12, 2018 press release, UHY "expanded its office in the mid-Atlantic region through its merger of the professional services firm [BGR]." The "merger double[d] the size of UHY in the Maryland area."

25. UHY's website touts the firm's "commit[ment] to relieving the tax burdens of businesses, individuals, and families," claiming to be "specialists in state income and franchise tax issues covering various industries" with "a deep and vast understanding of state tax laws and state tax returns."

26. After UHY acquired BGR, UHY continued to prepare and file Nutramax's state and federal income tax returns.

27. Nutramax and UHY had a valid and binding contract for those tax preparation services.

28. Substantially all services that BGR and UHY performed for Nutramax occurred in BGR's and UHY's offices in Columbia, Maryland.

29. During Nutramax's relationship with both BGR and UHY, Nutramax relied on BGR's and UHY's knowledge, skill, and experience to provide tax advice and to properly prepare and file its state and federal tax returns, including (a) properly apportioning Nutramax's sales revenue among states according to the applicable apportionment rules and (b) claiming all applicable tax deductions and credits to which Nutramax and its shareholders were legally entitled.

30. While providing services to Nutramax, BGR and UHY periodically requested documents or information from Nutramax to prepare the tax returns, and Nutramax provided the requested documents and information.

**C.  BGR and UHY Made Significant Errors on Nutramax's State Income Tax Returns.**

31. In or around April 2020, Nutramax stopped using UHY and hired a different accounting firm to provide tax advice and handle its tax returns.

32. During the transition of services to Nutramax's new accounting firm, upon reviewing Nutramax's previously filed South Carolina income tax returns, the new firm identified significant errors in the tax returns that BGR and UHY had prepared.

33. Specifically, Nutramax's sales revenue had been apportioned almost entirely to South Carolina notwithstanding that (a) almost 100% of Nutramax's sales had been to customers in other states and (b) South Carolina does not have a throwback rule (S.C. Code Ann. § 12-6-2280(B)), which would have required Nutramax to treat non-South Carolina income as sourced in South Carolina if not taxed by the true source state.

34. In addition, Nutramax was eligible for South Carolina's New Jobs Tax Credit (in addition to the discretionary credits provided under the Revitalization Agreement), but BGR and UHY failed to include those credits on Nutramax's South Carolina returns.

D. **Nutramax Amended its South Carolina Income Tax Returns.**

35. In or around February 2021, Nutramax filed amended income taxes returns in South Carolina for the taxable years ending in 2017, 2018, and 2019.

36. For Nutramax Laboratories, the difference between the as-filed sales apportionment and the as-amended sales apportionment for each year is striking:

**Ratio of S.C. Sales to Total Sales**

|  | As Originally Filed | As Amended |
|---|---|---|
| **2017** | 88.651089% | 0.1858% |
| **2018** | 85.5126% | 0.1820% |
| **2019** | 85.5794% | 0.1555% |

37. The amended returns for Nutramax Laboratories also included new job tax credits of $532,470 (2017), $525,470 (2018), and $421,470 (2019)—for a total of $1,479,410.

38. The amended returns for Nutramax Manufacturing included new job tax credits of $1,231,530 (2017), $1,171,780 (2018), and $874,030 (2019)—for a total of $3,277,340.

39. Based on the revised Schedule K-1s, some of Nutramax's shareholders also filed amended returns in South Carolina, entitling them to large tax refunds from South Carolina for those tax years.

40. Accordingly, Nutramax and its shareholders were able to avoid losing the tax benefits to which they were entitled for those years.

41. But Nutramax and its shareholders were unable to amend their South Carolina returns for any prior years because the time limit for amending those returns had expired.

42. The unrecoverable tax overpayments are estimated to be about $10 million (or more).

## COUNT ONE

### ACCOUNTING MALPRACTICE
### (PROFESSIONAL NEGLIGENCE)

43. Nutramax repeats and realleges each paragraph above as if set forth fully here.

44. Nutramax hired BGR and UHY (among other things) to prepare Nutramax's federal and state income tax returns and to provide advice about minimizing tax liability.

45. When BGR and UHY agreed to provide tax advice and render tax-preparation services for Nutramax, they had a duty to exercise the skill and knowledge normally possessed by members of their profession in good standing in similar communities. BGR and UHY breached their duty to Nutramax:

   a. By preparing and filing income tax returns that incorrectly apportioned Nutramax's sales income among states and overstating Nutramax's South Carolina sales, and

      b.      By failing to include the statutory job-creation tax credits that Nutramax was entitled to take under S.C. Code Ann. § 12-6-3360.

46.      Accountants and other tax-preparation professionals in good standing in similar communities would not have made the errors that BGR and UHY made.

47.      BGR's and UHY's breaches were a direct and proximate cause of damages to Nutramax and its shareholders of about $10 million of tax overpayments plus additional professional fees in excess of $583,000.

## COUNT TWO

## BREACH OF CONTRACT

48.      Nutramax repeats and realleges each paragraph above as if set forth fully here.

49.      Nutramax had a valid and binding contract with BGR for tax advice and preparation of income tax returns, including South Carolina income tax returns, for Nutramax and related entities and shareholders.

50.      After UHY acquired BGR, Nutramax had a valid and binding contract with UHY for tax advice and preparation of income tax returns, including South Carolina income tax returns, for Nutramax and related entities and shareholders.

51.      BGR and UHY breached their respective contracts with Nutramax by failing to properly prepare Nutramax's South Carolina income tax returns with the skill and knowledge normally possessed by members of their profession in good standing in similar communities.

52.      BGR's and UHY's breaches directly and proximately caused damages to Nutramax and its related entities and shareholders of about $10 million of tax overpayments plus additional professional fees in excess of $583,000.

## REQUEST FOR RELIEF

WHEREFORE, Nutramax requests the following relief:

A. Judgment in Nutramax's favor on all its claims;

B. An award in the amount of compensatory damages, reasonable attorneys' fees, and prejudgment interest on all amounts;

C. A jury trial on all issues so triable; and

D. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 13, 2022   **ALSTON & BIRD LLP**

*/s/ Anne J. Martin*
Anne J. Martin (Bar No. 21952)
950 F Street, NW
Washington, DC 20004-1404
Tel: (202) 239-3300
Fax: (202) 239-3333
anne.martin@alston.com

Michael R. Hoernlein (*pro hac vice motion forthcoming*)
J. Stephen Tagert (*pro hac vice motion forthcoming*)
101 South Tryon Street, Suite 4000
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
michael.hoernlein@alston.com
stephen.tagert@alston.com

*Counsel for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Manufacturing, Inc.*